# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| RYAN M. DAY,<br><br>Plaintiff,<br><br>v.<br><br>TACOMA RV CENTER, INC.,<br><br>Respondent,<br><br>EUGENE N. BOLIN JR. and LAW OFFICES OF EUGENE N. BOLIN JR. PS,<br><br>Appellants. | No. 59095-6-II<br>(Consolidated with<br>No. 59788-8-II)<br><br><br>UNPUBLISHED OPINION |
| AUBREY N. RINEHART, a single woman,<br><br>Plaintiff,<br><br>v.<br><br>TACOMA RV CENTER, INC., a Washington corporation; LADONNA MEADOWS and JOHN DOE MEADOWS, and the marital community Composed thereof; KEYSTONE RV COMPANY, a foreign business entity,<br><br>Respondents,<br><br>AMERICAN GUARDIAN WARRANTY SERVICES, INC., a foreign corporation; DEXTER AXLE COMPANY, a foreign limited liability company; and LIPPERT COMPONENTS MANUFACTURING, INC., a foreign profit corporation,<br><br>Defendants,<br><br>EUGENE N. BOLIN JR. and LAW OFFICES OF EUGENE N. BOLIN JR. PS,<br><br>Appellants. | |

PRICE, J. — Attorney Eugene Bolin, Jr. litigated several cases against a recreational vehicle (RV) dealership, Tacoma RV Center, on behalf of RV owners. Tacoma RV was defended in two of these cases by attorney David Jensen. At some point, Jensen lost his position at his law firm.

Bolin promptly hired Jensen. At that time, Bolin was prosecuting two other cases against Tacoma RV: *Rinehart v. Tacoma RV* and *Day v. Tacoma RV*. Neither Bolin nor Jensen disclosed Jensen's hiring to Tacoma RV.

Eventually Tacoma RV learned that Bolin had hired Jensen, causing it to move to disqualify both attorneys under RPC 1.9 and 1.10 from Bolin's two current cases. Keystone RV, a codefendant in *Rinehart*, joined the motion to disqualify in that case.

The superior court granted the motions and disqualified Bolin and Jensen from *Rinehart* and *Day* under RPCs 1.9 and 1.10 and also under CR 11. The superior court also awarded Tacoma RV approximately $135,000 in attorney fees and costs between the two cases. And it sanctioned Bolin in an amount equal to 75 percent of Keystone's total attorney fees and costs in *Rinehart*, roughly $376,000. Finally, the superior court ordered Bolin to pay a $50,000 sanction to one of two charitable legal foundations.

Bolin appeals the disqualification orders, attorney fee awards, and sanctions. Tacoma RV and Keystone seek attorney fees and costs on appeal, in part, based on Bolin's appeal being frivolous.

We affirm the disqualification, attorney fees, and sanction orders. We grant Tacoma RV's request for appellate costs as a prevailing party, but otherwise deny the respondents' requests for appellate attorney fees.

2

FACTS

I. BACKGROUND

Bolin has been self-employed at his own firm, the Law Offices of Eugene N. Bolin Jr. P.S., since 1987. Bolin's law practice focuses on representing plaintiffs suing vehicle dealers and manufacturers, especially those that manufacture and sell RVs. One such RV dealership was Tacoma RV, which was owned by LaDonna Meadows. Over the years, Bolin represented many clients who sued Tacoma RV over alleged defects in their RVs. Relevant here, Bolin represented two couples, the Mielkes and the Maldonados, who separately sued various defendants including Tacoma RV and Meadows, as well as the manufacturer of the respective RVs, Keystone RV.

The *Mielke* and *Maldonado* complaints each included claims alleging that Tacoma RV used deceptive sales practices that violated the Consumer Protection Act (CPA), chapter 19.86 RCW. Both complaints alleged that the plaintiffs bought RVs from Tacoma RV with the intention of going on long trips around the country. And both complaints alleged that Tacoma RV staff specifically recommended certain RV models based on the plaintiffs' plans for lengthy trips, but failed to warn the plaintiffs that living in an RV for prolonged periods posed health risks from exposure to formaldehyde, mold, and mildew. Both complaints also made the same allegations that Tacoma RV's website and salespeople disseminated "deceptive information and materials about the warranties for the RVs they sell." Day Clerk's Papers (DCP) at 312.

At the time of these lawsuits, Tacoma RV was defended by its insurance company, Zurich Insurance. Zurich retained Jensen to defend Tacoma RV and Meadows in the *Mielke* and *Maldonado* lawsuits.

3

A.  INITIAL EVENTS (2021-2022)

In May 2021, while the *Mielke* and *Maldonado* lawsuits were ongoing, Bolin began representing two new clients, Aubrey Rinehart and her boyfriend Bryce Armeni, in suing Tacoma RV, Meadows, and Keystone over alleged defects in Rinehart's RV.  Rinehart alleged that she bought an RV to spend most of a year traveling, and that, with her "diagnosed allergy to mold and mildew," Tacoma RV salespeople recommended to her a specific Keystone RV because it was rated "for year-round full-time occupancy."  Rinehart Clerk's Papers (RCP) at 5-6.  She also asserted that Tacoma RV misled her about the warranty package that she purchased.  Among other claims, Rinehart alleged that Tacoma RV's sales practices were deceptive and violated the CPA.  Rinehart later amended her complaint to add claims against two defendants who manufactured components of the RV (manufacturing defendants).  Jensen did not represent Tacoma RV in the *Rinehart* litigation.

The *Rinehart* litigation was contentious from the outset with discovery disputes occurring on a regular basis.  In February 2022, Keystone sought a protective order from Bolin's extensive discovery requests.  These requests included all complaints of deceptive or unfair conduct, all reports of respiratory illness, all reports of mold, mildew, or formaldehyde exposure, and all warranty claims that Keystone had received in the last ten years.  Bolin supported the breadth of his requests by arguing that CPA claims require a showing of a public impact, which "is typically demonstrated by proving that other consumers have suffered the same (or similar) kind of harm as the Plaintiff."  RCP at 501 (emphasis omitted).  The superior court granted Keystone's motion and

issued a protective order, ruling that Bolin's discovery requests were "overly broad."[1]  RCP at 1247.

B.  BOLIN HIRES JENSEN (LATE 2022-EARLY 2023)

In September or October 2022, Zurich discontinued Jensen's employment.  Shortly thereafter, in November 2022, Bolin began discussions with Jensen about a possible position at Bolin's firm.

Jensen and Bolin apparently discussed the ethical issues presented by Jensen's previous employment.  In January 2023, Jensen sent Bolin an e-mail discussing how to "get[] around" this ethical problem.  DCP at 828; RCP at 8977.  Jensen stated that his prior cases "arose from a single sale usually involving facts (sales terms and (mis)representations) that were unique to each sale that resulted in litigation."  DCP at 828; RCP at 8977.  Thus, Jensen believed that opposing his former clients in new cases unrelated to those prior sales would not implicate the ethical rules.

Bolin then hired Jensen.  Neither Bolin nor Jensen informed Tacoma RV of Jensen's new position.

The same month Jensen was hired, later-disclosed e-mails showed that Bolin and Jensen discussed strategies for the *Mielke* lawsuit, notwithstanding Jensen's previous role in defending

---

[1] Meanwhile, in the *Mielke* litigation, Keystone had secured a summary judgment order that dismissed all of the Mielkes' claims against it in October 2021.  *See Mielke v. Tacoma RV Ctr.*, No. 85663-4-I, slip op. at 3-4 (Wash. Ct. App. Apr. 8, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/856634.pdf.  Bolin unsuccessfully appealed the summary judgment order.  *Mielke*, No. 85663-4-I, slip op. at 2, 18.

Later, in mid-2022, Tacoma RV also ended its participation in the *Mielke* litigation with a settlement for $170,000.  As part of the settlement, Tacoma RV and Meadows assigned to the Mielkes all "contractual and other claims" they had against Keystone.  RCP at 3631.

In November 2022, Tacoma RV settled the *Maldonado* lawsuit.

5

Tacoma RV against the Mielkes. For example, Jensen suggested that after the summary judgment ruling in *Mielke*, Bolin could file a new lawsuit against Keystone "to enforce the indemnity rights as the assignee of [Tacoma RV]." DCP at 831; RCP at 8980.

During this e-mail exchange about the *Mielke* lawsuit, Bolin also mentioned the *Rinehart* case. Bolin wrote that he was "thinking more about the motion in the Rinehart case set for this Friday," referring to a motion to compel from Keystone seeking expert documents and records. DCP at 831; RCP at 8980. Bolin told Jensen, "I think we should try to keep you under wraps until the Rinehart case is tried or settled." DCP at 831; RCP at 8780. "The trial date is in May and I really don't want to have to deal with any kind of motion relating to your new employment with us, until we recover in that case." DCP at 831; RCP at 8780. Bolin also asked Jensen not to change his address in the Washington State Bar Association's (WSBA's) legal directory: "I see that your home address is on the WSBA website now. Do you mind keeping it that way until Rinehart is over?" DCP at 832; RCP at 8781.

On March 19, 2023, three months after hiring Jensen, Bolin sent an e-mail memo to the staff at his firm stating that Jensen should be screened from cases against Tacoma RV. The memo stated that Jensen "represented Tacoma RV in other RV cases I have filed, while he was working as staff counsel for Zurich Insurance." DCP at 1497; RCP at 9790. "The Rules of Professional Conduct . . . generally prohibit a lawyer from suing a former client in any matter which is 'substantially related' to the former representation. This means that [Jensen] cannot have any involvement in the Rinehart case, or any other case of ours in which [Tacoma RV] is a defendant." DCP at 1497; RCP at 9790.

Despite the screening memo, Jensen was involved in many communications about the *Rinehart* litigation. Between January 2023 and May 2023, Jensen sent or received nearly 30

e-mails regarding *Rinehart*. Bolin alone sent Jensen more than 20 e-mails regarding *Rinehart* that apparently implicated attorney-client privilege or contained work product. Bolin sent 16 of those e-mails *after* the March 19 screening memo. Most of these e-mails were among staff at the Bolin firm, but Jensen was copied on at least six client e-mails directly between Bolin and Rinehart. And while many of the e-mails covered topics related to several clients, Jensen sent or received at least 16 e-mails solely discussing *Rinehart*, all of which were sent after the March 19 screening memo. (The contents of these *Rinehart*-related e-mails are not in our record—Bolin only disclosed their existence many months later in a privilege log, discussed below.)

C. ADDITIONAL LITIGATION EVENTS THROUGHOUT 2023

In March 2023, Bolin brought another lawsuit against Tacoma RV on behalf of a new client, Ryan Day. Day alleged that he bought an RV for his family to live in and that Tacoma RV's salespeople convinced him to buy a new RV by making false claims about the condition of the RV and the applicable warranty. Day asserted that the RV leaked extensively, including behind the walls. He also alleged that Tacoma RV's website had deceptive and misleading advertising. Like Rinehart, Day included a claim that Tacoma RV used deceptive sales practices that violated the CPA. Keystone was not a party to the *Day* lawsuit.

Later that month, Bolin moved to appoint a special discovery master for the *Rinehart* lawsuit, which every defendant opposed. In April 2023, the superior court denied the motion.

Difficulties in discovery continued. For example, in June 2023, Bolin stopped a deposition of Rinehart before Keystone's counsel could ask her any questions, leading to a motion by Keystone to compel resumption of the deposition (which was granted). And only a few days later, numerous conflicts forced the superior court to hear arguments in seven different discovery motions in a single day.

7

On all seven discovery motions, the superior court ruled against Rinehart (and Bolin). The superior court awarded sanctions to Keystone and two manufacturing defendants based on findings that Bolin had willfully committed discovery violations. The superior court remarked on the egregiousness of Bolin's behavior, stating, "It is clear to this Court that plaintiff is going far beyond the scope of . . . discovery that would lead to relevant evidence and is, in fact, weaponizing discovery in a way that I, quite frankly, have not experienced in my career thus far." Verbatim Rep. of Proc. (VRP) (June 16, 2023) at 39-40.

## II. MOTION TO DISQUALIFY IN *RINEHART* (APRIL-NOVEMBER 2023)

On April 5, 2023, Tacoma RV first learned about Bolin hiring its former attorney, Jensen. While Bolin's motion to appoint a special master in the *Rinehart* litigation was pending, Bolin e-mailed both Tacoma RV and Keystone about the motion. Notably, Jensen's name was included as a "cc" on the e-mail. Surprised to see Jensen's name, Tacoma RV immediately asked Bolin if the Jensen copied on the e-mail was the same person who had previously represented Tacoma RV, and if yes, how his representation of Rinehart against Tacoma RV was permissible.

Bolin admitted that it was the same Jensen, but Bolin flatly denied that Jensen was working on *Rinehart*. Bolin called Jensen's inclusion on the e-mail "inadvertent" and claimed that Jensen "has not and will not work on the case in any way." RCP at 2124. "We have erected a . . . wall between [Jensen] and the Rinehart case, and all other cases in my office [in]volving former Zurich insureds that he represented." RCP at 2124. "Everyone in my office has been instructed that [Jensen] is to have nothing to do with Rinehart since I hired him, or any other case involving a former client . . . ." RCP at 2124. Bolin "denied any actual conflict of interest" and stated that his firm had "taken steps to isolate [Jensen] from the Rinehart case." RCP at 2127.

8

Notwithstanding Bolin's denial of a conflict, Tacoma RV moved to disqualify Jensen and Bolin's firm from representing Rinehart under RPC 1.9 and RPC 1.10. RCP at 2103, 2017.

Three days after Tacoma RV filed the motion, Jensen left Bolin's firm.

A.  ETHICAL RULES SUPPORTING TACOMA RV'S MOTION FOR DISQUALIFICATION

Tacoma RV's disqualification motion was rooted in two ethical rules—RPC 1.9 and 1.10. In short, RPC 1.9 limits when a lawyer may represent a party opposing a former client. A lawyer cannot "represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client" without the former client's consent. RPC 1.9(a). Comments to the rule explain that that matters are substantially related "if they involve the same transaction or legal dispute *or* if there otherwise is *a substantial risk* that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." RPC 1.9 cmt. 3 (emphasis added). For lawyers who have previously represented organizations, "general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation; on the other hand, knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation." RPC 1.9 cmt. 3. And RPC 1.10 prohibits lawyers in a firm from representing a client "when any one of them practicing alone would be prohibited from doing so" under RPC 1.9, except under specific circumstances not present in this case, such as when the former client waives the conflict. RPC 1.10(a).

B.  INITIAL ARGUMENTS ABOUT DISQUALIFICATION UNDER RPC 1.9 AND 1.10 (APRIL-JUNE 2023)

Tacoma RV's motion for disqualification argued that the claims and factual allegations in the three cases—*Mielke*, *Maldonado*, and *Rinehart*—were "nearly identical." RCP at 2109.

Tacoma RV highlighted, in particular, that all three cases involved CPA claims. According to Tacoma RV, depositions in *Mielke* and *Maldonado* "explore[d] extensively Tacoma RV's knowledge of facts, policies, and other matters that are directly relevant in [*Rinehart*]." RCP at 2110. And because of the CPA claims, Bolin sought "discovery from Tacoma RV as to all prior lawsuits . . . ." RCP at 2110. Moreover, Tacoma RV's counsel stated that in March 2022 (when Jensen was still representing Tacoma RV in other cases), he actually spoke to Jensen and discussed strategy for the *Rinehart* litigation.

Keystone joined Tacoma RV's motion for disqualification. Keystone's counsel stated that he also had worked with Jensen on *Mielke* and had shared "defense only communications and disclosures regarding the defense of Tacoma RV and Keystone . . . that were privileged and should not be divulged and/or used for any purpose in this Lawsuit." RCP at 2668.

In response, Bolin argued that *Rinehart* was not substantially related to either *Mielke* or *Maldonado*, contending that the alleged defects in each RV were different. Bolin also argued that there was not a substantial risk that Jensen obtained confidential factual information that would materially advance Rinehart's case.

For his part, Jensen filed a declaration stating that he "never had any substantive discussions with Ms. Meadows" or anyone else from Tacoma RV about *Rinehart*. RCP at 3627. Jensen claimed that he "was inadvertently copied on one or more emails in the Rinehart case, but I did not open these e-mails." RCP at 3629. "I was not involved in any discussions including the Rinehart case or [Tacoma RV] with Mr. Bolin or any of his employees." RCP at 3629. (Jensen disputed Tacoma RV's counsel's representation that the two of them had discussed strategy for the *Rinehart* litigation.)

10

At this point, no opposing party knew about the e-mails that would later come to light; neither Jensen nor Bolin mentioned that Jensen had received 28 e-mails about privileged matters in *Rinehart* by this point, including at least five where he was the primary recipient.

Despite being in the dark about the e-mails, Tacoma RV's reply emphasized that Bolin and Jensen never disclosed that Jensen was working with Bolin before Jensen was copied on the e-mail to opposing counsel.[2]  Meadows also filed a declaration in which she explained that, while representing her and Tacoma RV in *Mielke* and *Maldonado*, Jensen gained "extensive knowledge of our internal policies, procedures, and activities and . . . litigation strategy," all of which she believed was confidential information.  RCP at 3813.  She was also concerned about Jensen assisting Bolin with the recently filed case involving Day.

Keystone's reply raised an additional basis for disqualification—Bolin's litigation conduct.  Keystone pointed to several examples of egregious conduct that occurred while the motion to disqualify was pending, including the hearing in June 2023 where the superior court ruled against Bolin in seven different discovery motions and found that he willfully committed discovery violations.  Keystone observed that Bolin had been repeatedly sanctioned for his litigation conduct against Keystone's counsel in the *Mielke* litigation as well as in another case where Bolin wrongfully accused Keystone's counsel of lying and committing criminal acts.

---

[2] Tacoma RV submitted other evidence that suggested that Bolin was being untruthful, specifically that Bolin encouraged a friend of Rinehart's boyfriend, Armeni, to give a false statement.  In a deposition, Armeni claimed that his friend damaged his truck.  But Tacoma RV submitted a declaration where the friend denied causing the damage, and attached text messages where Armeni told him, "I might have used you as an excuse during my deposition.  Just FYI.  So if for some reason you are ever asked[,] yes you [damaged] . . . my truck on accident."  RCP at 3784.  The friend also provided a text from Rinehart that stated, "My attorney said there's no risk to you guys b[ecause] it's just a witness statement."  RCP at 3789.

As for the alleged violation of the RPCs, the only disputed question for the disqualification motion was whether the *Rinehart* litigation was substantially related to cases where Jensen represented Tacoma RV—*Mielke* and *Maldonado*.

C. BOLIN WITHDRAWS AS COUNSEL FOR RINEHART, HIRES HIS OWN COUNSEL, AND INITIALLY FAILS TO BRIEF THE DISQUALIFICATION MOTION (JUNE-JULY 2023)

The defendants' motion for disqualification was set for a hearing on June 23, 2023. Three days before the hearing, Bolin filed a notice of intent to withdraw as counsel for Armeni, Rinehart's boyfriend.[3] Then, one day before the hearing, Bolin filed a notice of intent to withdraw as counsel for Rinehart, effective July 2.

At the disqualification hearing, Bolin claimed that he was withdrawing as counsel for Rinehart for reasons unrelated to the motion to disqualify. Tacoma RV and Keystone objected, arguing that Bolin should be fully disqualified instead of being allowed to withdraw. The superior court allowed Bolin to withdraw preliminarily, but it set an evidentiary hearing on the motion to disqualify for June 30, together with a briefing schedule.

Two days before the June 30 evidentiary hearing, a new counsel appeared for Rinehart. That same day, Rinehart filed a motion to dismiss her case without prejudice.

Notwithstanding this pending dismissal of Rinehart's case, several defendants finished deposing her on June 28 and 29 (following the superior court's order that her deposition was required to resume). During this deposition, Rinehart confirmed that Jensen was copied on several e-mails that Bolin sent to her, although she could not remember how many. She also said that she

---

[3] Bolin moved to withdraw as counsel for Armeni the day before Tacoma RV filed its reply alleging that Bolin encouraged Armeni's perjury.

did not fire Bolin; he decided to terminate their relationship. Meanwhile, Bolin failed to file any briefing for the evidentiary hearing.

At the June 30 evidentiary hearing, Rinehart's new counsel sought to forestall disqualification proceedings because Rinehart was actively trying to dismiss her case. Bolin also appeared and orally argued that the superior court did not have authority to disqualify him because of his withdrawal.

Tacoma RV responded that Rinehart's proposed dismissal was *without* prejudice, so Bolin could potentially "withdraw[] today, we cancel this hearing, and then he's back tomorrow." VRP (June 20, 2023) at 6. Keystone agreed with Tacoma RV's position and added that rather than end the evidentiary hearing, the hearing should be continued. Keystone complained that Bolin had not complied with scheduling orders to produce briefing on the disqualification, so proceeding with the evidentiary hearing would prejudice the defendants.

The superior court agreed to continue the hearing on disqualification until July 28 and set a new briefing schedule. The scheduling order provided that Bolin's response about the superior court's authority to disqualify him was due July 17, and his response to the merits of the motion was due July 21.

On July 17, the day his first brief was due, Bolin e-mailed the superior court stating that he "would like to retain personal counsel," and estimating that doing so would take two weeks. RCP at 5189. "This will, of course, necessarily pre-empt the briefing schedule in [the June 30] order." RCP at 5190. Tacoma RV and Keystone both moved to strike this request and sought a contempt finding against Bolin for defying court orders.

Two days after his e-mail, Bolin retained counsel who appeared on his behalf. The superior court later sanctioned Bolin for causing Tacoma RV to prepare for the June 30 evidentiary hearing,

13

which had to be continued due to Bolin's "unexcused failure" to comply with the court's scheduling order. RCP at 8789.

D. ARGUMENTS ABOUT DISQUALIFICATION UNDER CR 11 AND THE SUPERIOR COURT'S AUTHORITY (JULY 2023)

On July 21, Bolin individually (not his counsel) filed a brief and declaration responding to the disqualification motion. Bolin first argued that the superior court lacked authority to disqualify him because his withdrawal as counsel rendered the issue moot. Bolin also asserted that WSBA disciplinary proceedings were the proper forum for any ethical claims against him. Bolin offered no substantive response to the merits of the disqualification motion, but he called the claims "hyperbole, ad hominem attacks, and speculation" and stated, "I vigorously assert that I have at all times complied with the Court Rules, Washington statutes, the Rules of Professional Conduct, and all standards of conduct for officers of the Court." RCP at 5338 (emphasis omitted).

Tacoma RV and Keystone filed responses that argued that the superior court had authority to disqualify Bolin despite his withdrawal. Tacoma RV also contended that, in addition to the RPCs, CR 11, and the court's "inherent authority" to manage litigation provided the authority to disqualify Bolin because of his extreme conduct. RCP at 8443. On the merits, Tacoma RV highlighted that Bolin had offered no explanation for why he hid Jensen's hiring from the defendants. Like Tacoma RV, Keystone argued that Bolin's actions of hiring Jensen, encouraging perjury, and weaponizing discovery were all bases for disqualification under CR 11.

In reply, Bolin's counsel claimed that no party had notified Bolin that they believed his conduct violated CR 11. Bolin's counsel argued that the defendants would need to demonstrate that Jensen *actually disclosed* confidential information regarding *Rinehart* or a substantially related case in order to merit disqualification. Bolin's counsel also insisted that Jensen had been

only inadvertently copied on e-mails regarding *Rinehart*. (At this point, the numerous e-mails between Bolin and Jensen discussing privileged topics in *Rinehart* had not yet come to light, and Bolin's counsel did not mention them.)

In the meantime, at a separate hearing on July 21, the superior court found Bolin in contempt for willfully and intentionally violating court orders, based on Bolin's July 17 e-mail about preempting the scheduling order because of his need to retain counsel.

E. INITIAL RULINGS DENYING DISQUALIFICATION AND GRANTING DISMISSAL WITH PREJUDICE (JULY-AUGUST 2023)

At the July 28 hearing on disqualification (rescheduled from June 30), the superior court ruled that it had authority to hear the motion, notwithstanding Bolin's withdrawal. The superior court reasoned, in part, that Tacoma RV filed the motion months before Bolin withdrew. The superior court also observed that "motions to disqualify are clearly within the authority and realm of this Court regardless of whether there's a CR 11 motion pending or not . . . ." VRP (July 28, 2023) at 10.

The superior court then heard arguments on the merits of the disqualification and took the ruling under advisement.

About two weeks later on August 11, the superior court issued a lengthy written ruling, denying the motion to disqualify. It concluded that there was "no evidence to support that Jensen shared confidential information with Mr. Bolin." RCP at 8771. The superior court also concluded that the *Mielke*, *Maldonado*, and *Rinehart* lawsuits were not substantially related within the meaning of RPC 1.9 because of "substantial" factual distinctions. RCP at 8771. Thus, although the superior court found Bolin's conduct related to Jensen's "hiring to be of serious concern," the

15

superior court did not believe that disqualification under RPC 1.9 or 1.10 was warranted. RCP at 8771.

Despite denying the motion to disqualify, the superior court ordered the parties "to report the fact of these proceedings and underlying information" to the WSBA within 45 days. RCP at 8772. Rather than report his own conduct to the WSBA, Bolin claimed compliance with this directive by filing a grievance against Keystone's counsel for alleged evidence tampering (and he claimed that he planned to file a separate grievance against Tacoma RV's counsel as well).

The same day the superior court issued its ruling, the superior court granted Rinehart's motion to voluntarily dismiss her claims, except that the court dismissed her case *with* prejudice. But the superior court ordered that it would retain, among other things, jurisdiction over the motion to disqualify, all pending motions for attorney fees, and "all other matters . . . collateral to" Rinehart's claims or Tacoma RV's counterclaims. RCP at 8783.

III. MOTION TO DISQUALIFY IN *DAY* AND RECONSIDERATION REQUEST IN *RINEHART* (AUGUST-NOVEMBER 2023)

On August 9, two days before the superior court denied the motion to disqualify Bolin in *Rinehart*, Tacoma RV moved to disqualify Bolin from the *Day* lawsuit.[4] Tacoma RV again argued that RPCs 1.9 and 1.10 required disqualification because *Day* was substantially related to the *Mielke* and *Maldonado* cases. And Tacoma RV argued that Bolin's efforts to conceal Jensen's hiring merited disqualification. The superior court set a hearing for the *Day* motion to disqualify on October 27, 2023.

---

[4] The same judge presided over both cases, and there had been minimal activity in *Day* since Tacoma RV filed its answer in March 2023. (Keystone was not a party to the *Day* litigation.)

While the *Day* motion was pending, on August 21, Tacoma RV moved for reconsideration in *Rinehart*. The motion focused on the superior court's statement that there was no evidence Jensen *actually shared* confidential information with Bolin. Tacoma RV reasoned that the correct standard was, instead, whether there was a *substantial risk* that information that Jensen would normally obtain during his representation of Tacoma RV would materially advance a subsequent client's position. If this standard was applied, Tacoma RV contended the superior court would have found a violation of the RPCs.

A.  DISCLOSURE OF THE JENSEN E-MAILS AND BOLIN PRIVILEGE LOG (SEPTEMBER-OCTOBER 2023)

Unlike in *Rinehart*, Tacoma RV propounded discovery related to its disqualification motion in *Day*. Tacoma RV subpoenaed Bolin and Jensen for depositions and documents regarding Jensen's involvement with *Day* and *Rinehart*. Bolin moved to quash the subpoenas against himself and his firm, arguing that the subpoenas were "intended solely to harass, annoy, and unnecessarily increase the cost of litigation." DCP at 637. He asserted that the information sought was protected by attorney-client privilege, and he requested CR 11 sanctions against Tacoma RV's counsel. In response, Tacoma RV moved for an order compelling compliance with the subpoenas.

Jensen, however, now no longer employed by Bolin, produced documents responding to Tacoma RV's subpoenas. In his e-mail disclosing the documents, Jensen denied doing any substantive work on *Rinehart* or *Day*. And he cautioned that the documents that he turned over were all that he had in his possession because he no longer had access to his e-mail account from Bolin's firm.

Still, Jensen produced a handful of e-mails where Bolin solicited his employment and the two discussed matters related to the *Mielke* and *Rinehart* lawsuits. These included the e-mails

17

(identified above) where Jensen advised Bolin about how to pursue Tacoma RV's indemnity claim against Keystone in *Mielke*, and where Bolin referenced a prior discussion about a motion to compel in *Rinehart*. Jensen also produced the e-mail where Bolin asked Jensen to keep his hiring "under wraps" and to not change his address on the WSBA website until *Rinehart* was resolved. DCP at 831.

Two days after seeing the Jensen e-mails, Tacoma RV submitted them to the superior court in a supplemental reply regarding its motion to compel discovery from Bolin.

At a hearing on the motions to quash and compel, Bolin moved to strike Tacoma RV's supplemental reply (that included the Jensen e-mails) as untimely. The superior court denied Bolin's motions and ordered Bolin to provide all non-privileged information responsive to the subpoenas. To the extent that privileges applied, the superior court directed Bolin to create a privilege log. Bolin moved for reconsideration of these rulings, which the superior court denied.

On October 16, Bolin produced a privilege log listing 29 e-mails to or from Jensen regarding the *Rinehart* litigation (discussed above). None of the e-mails were identified as discussing the *Day* litigation. Bolin claimed that all the e-mails were protected by attorney client privilege, work product protections, or both. (The e-mails on the privilege log were not provided to the court for in camera review, despite an order to do so.) Bolin also filed objections to Tacoma RV's subpoenas, again claiming assorted privilege violations and seeking roughly $42,000 in compensation for complying with the subpoenas.

B. DISQUALIFICATION ARGUMENTS IN *DAY* (OCTOBER 2023)

A week after disclosure of the privilege log, Bolin filed his response to the *Day* motion for disqualification. Consistent with his position in *Rinehart*, Bolin maintained that "Jensen did not work on any cases involving Tacoma RV." DCP at 1514. "None of the emails produced by Mr.

Jensen include or mention[] Ryan Day. None of the documents produced by Mr. Bolin . . . refer to, or include, any information linking Mr. Jensen to any work on Mr. Day's case." DCP at 1517. Bolin further maintained that the *Day* litigation was not substantially related to any of Jensen's prior cases working for Tacoma RV. Bolin also produced a chart purporting to identify factual differences between the *Day*, *Rinehart*, *Mielke*, and *Maldonado* cases. And Bolin, for the first time, submitted the March 19 screening memo he circulated to his employees about how Jensen needed to be screened from Tacoma RV cases.

In reply, Tacoma RV reiterated that it did not need to show that Jensen actually obtained or shared confidential information to show a violation of RPC 1.9. Tacoma RV insisted that the matters were substantially related because they all involved CPA claims. Related to these claims, Tacoma RV argued, "Plaintiff will seek, and has sought discovery of the facts related to '[Tacoma RV's] conduct, policies, and procedures, or lack thereof' in each case to demonstrate that the same facts exist in this case." DCP at 1527.

Tacoma RV then pointed out that Bolin denied the existence of any substantive communications with Jensen about either *Day* or *Rinehart* for the last six months, and yet, Bolin listed 29 e-mails in his privilege log—the contents of which were unknown because Bolin claimed attorney-client and work product privileges over them. Accordingly, Tacoma RV asserted that RPC 1.9's substantial risk test was satisfied. In addition, it contended that Bolin's numerous false statements merited sanctions, including disqualification from *Day*.

C. RECONSIDERATION OF ORDER DENYING DISQUALIFICATION IN *RINEHART* (OCTOBER 26-27, 2023)

Armed with the newly disclosed Jensen e-mails and Bolin's privilege log received in the *Day* discovery, Tacoma RV's counsel turned back to the *Rinehart* case and its pending motion for

19

reconsideration of the denial of disqualification. Tacoma RV filed a supplemental declaration in support of reconsideration, which attached Bolin's privilege log from *Day*, plus several additional documents that Bolin had filed, including documents attacking Tacoma RV's counsel, moving to quash the subpoenas, and seeking sanctions and fees. Bolin moved to strike this declaration, arguing that it included "substantial new evidence" to which he had not had the opportunity to respond. RCP at 9705.

After reviewing this new information, the superior court granted reconsideration of its order denying Bolin's disqualification in *Rinehart*. In its written order, the superior court conceded that it had erroneously believed that Tacoma RV had to "demonstrate that Jensen shared confidential information with Mr. Bolin to be disqualified." RCP at 9709. The superior court vacated its prior findings of fact and conclusions of law, and it committed to issuing new findings and conclusions.

D. *DAY* DISQUALIFICATION HEARING (OCTOBER 27, 2023)

On the same day as its reconsideration order in *Rinehart*, the superior court held its hearing for the *Day* disqualification. At the hearing, Tacoma RV maintained that disqualification was proper under RPC 1.9 and 1.10 because of the similarity between the facts underlying the CPA claims in each case. It also argued that Bolin's misconduct in concealing Jensen's hiring and work on the *Rinehart* case was a separate basis for disqualification.

Bolin, appearing through counsel, responded that the e-mails Jensen disclosed did not contain any confidential information. Bolin's counsel also pointed out that Day hired Bolin in February 2023, and Jensen left the firm very soon thereafter in April. In addition, they asserted that Day did not need information from the *Mielke*, *Maldonado*, or *Rinehart* cases to prove the public interest element of his CPA claim. Citing our Supreme Court's decision in *Plein v. USAA*

*Casualty Insurance Company*, 195 Wn.2d 677, 463 P.3d 728 (2020), counsel also argued that the different defects alleged about each RV prevented the cases from being substantially related under RPC 1.9.

Following the arguments, the superior court orally granted the motion to disqualify, determining that *Mielke* and *Maldonado* were substantially related to *Day*. The superior court placed significance on Bolin's assertion of attorney-client privilege for e-mails with Jensen related to *Rinehart*, despite Bolin simultaneously claiming that Jensen never worked on that case. As a result, not only did the superior court disqualify Jensen and Bolin from the *Day* litigation under RPC 1.9 and 1.10, it also found that Bolin had acted with a lack of candor, which led to the superior court imposing a sanction of $50,000 to be paid to the WSBA or Legal Foundation of Washington. The superior court also committed to entering written findings of fact and conclusions of law.

E. FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING DISQUALIFICATION (NOVEMBER 2023)

Six days later, on November 2, 2023, the superior court entered lengthy written findings of fact and conclusions of law for both the *Rinehart* and the *Day* disqualifications. Both orders contained findings of fact and conclusions of law addressing Bolin's violations of the RPCs and his violations of CR 11. The two orders were not identical, but because they were highly similar, we describe them collectively.

1. Findings and conclusions regarding disqualification under RPC 1.9 and 1.10

The superior court first addressed the motions to disqualify Bolin and Jensen under RPC 1.9 and 1.10.

The superior court entered findings of fact --in both cases to establish that *Day* and *Rinehart* were substantially related to *Mielke* and *Maldonado* (and to each other). The superior court also

found that "the facts forming the basis" of the CPA claims in *Day* and *Rinehart* were "nearly identical" to *Mielke* and *Maldonado*. DCP at 1687; RCP at 9725. And it found that each of the four complaints "concern the purchase of an RV from Tacoma RV for traveling around the country," and that each CPA claim was based on facts "related to Tacoma RV's advertising." DCP at 1687-88; RCP at 9724. Specifically, each of the four cases "allege[d] that Tacoma RV has made false and misleading advertising statements on their website and in personal conversations with the respective plaintiffs and has engaged in 'false, deceptive, and misleading' conduct." DCP at 1689; RCP at 9726. And the *Day*, *Mielke*, and *Maldonado* complaints each alleged "that repairs at Tacoma RV were performed poorly or not at all." DCP at 1689.

The superior court entered findings in both cases establishing that Jensen obtained confidential information during his representation of Tacoma RV. In particular, the superior court found that "Jensen obtained confidential and privileged factual information from LaDonna Meadows and Tacoma RV" during his representation in *Mielke* and *Maldonado*, in part by preparing Meadows for depositions. DCP at 1686; RCP at 9724.

The superior court also entered findings in both cases highlighting how the confidential information Jensen obtained from representing Tacoma RV would advance Rinehart's and Day's claims. The superior court found that "Bolin has sought discovery in each case regarding other lawsuits or complaints against Tacoma RV because he has stated that the facts in those other cases are related and relevant to his clients' . . . Consumer Protection Act claims." DCP at 1688; RCP at 9725.

The superior court entered several conclusions of law setting out how the four cases were substantially related. For *Day*, the superior court concluded,

22

> There are facts in *Mielke, Maldonado,* and *Rinehart* which are different from [*Day*]. However, with respect to the Consumer Protection Act claims, the factual allegations forming the basis of those claims are substantially, and necessarily, the same. . . . [In particular], the same factual allegations related to Tacoma RV's advertising, repair work, and the existence of and compliance with policies and procedures form the basis of the Plaintiffs' Consumer Protection Act claims in each case . . . .

DCP at 1693; *see* RCP at 9732.

In both orders, the superior court also concluded that the ethical wall Bolin claimed to have established was ineffectual. It observed that the ethical wall "neither prevented Mr. Jensen from being copied on emails related to matters in which Mr. Jensen had previously represented Tacoma RV, nor did it prevent Mr. Bolin and Mr. Jensen from openly discussing matters in which Mr. Jensen previously represented [Tacoma RV] against Mr. Bolin and his clients." DCP at 1692; RCP at 9731. And it stated that the fact that Bolin never turned over the contents of the e-mails in his privilege log for in camera review "causes the Court serious concern." DCP at 1693; RCP at 9731.

The superior court entered conclusions in *Day* expressly addressing RPC 1.9's reference to substantial risk.

> Jensen's confidential knowledge of these facts, which he gained while representing [Tacoma RV] in *Mielke* and [*Maldonado*], is not simply general knowledge but relates directly to the public interest element of Plaintiff Ryan Day's Consumer Protection Act claim in this case and is the same factual information that [Bolin] has sought to discover and offer in cases in support of Consumer Protection Act claims.
>
> . . . The Plaintiff in each matter seeks to point to the facts in the other cases to demonstrate that Tacoma RV's advertising, repairs, and its policies, practices, or procedures (or lack thereof) in each case is the same, has been repeated, and therefore the public interest element of his or her CPA claims has been proven. If the facts, or conduct, was not the same it would not satisfy that element of the CPA claims. . . .

DCP at 1693.

23

The superior court entered functionally identical conclusions in *Rinehart*. The superior court also entered an additional conclusion in *Rinehart* observing that the "matters are essentially all the same dispute regarding whether Tacoma RV's advertising and its policies, practices, or procedures (or lack thereof), violate the Consumer Protection Act in a way that establishes a public impact," which was a necessary element of all CPA claims RCP at 9733.

Thus, for both *Day* and *Rinehart*, the superior court concluded that there was a substantial risk that confidential factual information (information that Jensen would have normally obtained during his representation of Tacoma RV) would materially advance Day's and Rinehart's positions. The superior court therefore disqualified Jensen, Bolin, and Bolin's firm from representing Day and Rinehart under RPC 1.9 and 1.10.

2. Findings and conclusions regarding disqualification under CR 11

As a separate basis for both cases, the superior court also entered findings and conclusions to disqualify Bolin and Jensen under CR 11.

In both orders, the superior court highlighted Bolin's conduct of concealing Jensen's hiring and Jensen's work on *Rinehart*. The superior court found that instead of disclosing the hiring, both Bolin and Jensen "devised a plan to 'keep it under wraps' and went so far as to delay changing Mr. Jensen's address on the WSBA website in furtherance of this effort." DCP at 1685; RCP at 9722-23.

In both cases, findings were entered that Bolin actively deceived Tacoma RV, the court, and the public about the nature of Jensen's work. The superior court found that "Bolin made several false or misleading statements designed to mislead this Court as to the facts related to his hiring of Mr. Jensen." RCP at 9728; *see* DCP at 1691-92.

> Mr. Bolin and Mr. Jensen assert that they had an oral agreement that they would implement an ethical wall to ensure that Mr. Jensen was not included in this case, did not discuss this case, and had no communications with members of The Bolin Firm regarding Tacoma RV or this case. The Court finds that the assertions by Mr. Bolin that he did not discuss [Tacoma RV] or this case with Jensen were false in light of the emails produced by Mr. Jensen . . . and the 29 entries on the privilege log provided by Mr. Bolin.

DCP at 1685-86; *see* RCP at 9723. The superior court found Jensen's claim "that he never opened any email with *Rinehart* notated in the subject line" was not credible. DCP at 1686; RCP at 9723. Instead, "the Court finds that Mr. Jensen did communicate in writing with Mr. Bolin about [*Rinehart*] and other cases in which he had previously represented [Tacoma RV] against Mr. Bolin's clients." RCP at 9723.

The court found that, when Tacoma RV sought information about Jensen's hiring, Bolin obstructed the discovery:

> Bolin moved to quash the subpoenas, arguing that [Tacoma RV] and its counsel were on a fishing expedition, acting in bad faith, and violating multiple ethical rules . . . by seeking this discovery. Mr. Bolin also claimed several times that no responsive documents to the subpoenas existed.
>
> . . . Upon being served with Tacoma RV's Notice of Intent to serve the subpoenas, Mr. Bolin also sent an email to counsel for Tacoma RV stating that he had no intention to comply with the subpoenas, accused Tacoma RV's counsel of bad faith in serving the same, and stated that he would be filing a bar complaint against [Tacoma RV]'s counsel based upon the same.

DCP at 1683; *see* RCP at 9720. The superior court characterized these obstructive behaviors as "improper"—"These attacks on [Tacoma RV] and its counsel were made for an improper purpose to shield [Bolin's] own misconduct." DCP at 1691. The superior court also found that "Bolin weaponized discovery in [*Rinehart*] in a way the Court has rarely, if ever, seen, and [has] exhibited a lack of candor which is concerning." RCP at 9728.

25

Both orders highlighted the likely public perception of Bolin's wrongful conduct. In so doing, both orders contained a citation to an Eleventh Circuit case, *Cox v. American Cast Iron Pipe Company*, 847 F.2d 725 (11th Cir. 1988), in which the federal court balanced whether " 'the likelihood of public suspicion or obloquy outweighs the social interest which will be served by a lawyer's continued participation' " in a case. DCP at 1690; RCP at 9728 (quoting *Cox*, 847 F.2d at 729 ). The superior court found that Bolin's "multiple false statements" regarding Jensen's hiring and coverup readily met this test. DCP at 1690; RCP at 9729. In the *Day* order, the superior court entered an additional finding that Bolin's conduct created "an impermissible impression of misconduct and wrongdoing, which, if discovered by the public, would create the appearance of impropriety further justifying disqualification." DCP at 1690.

Ultimately, the superior court entered conclusions in both orders establishing that Bolin's conduct violated CR 11. In particular, the superior court concluded that the Jensen e-mails "demonstrate Mr. Bolin's attempts to 'get around' the ethical rules and deliberately conceal his hiring of Mr. Jensen from [Tacoma RV] and the WSBA." DCP at 1694; RCP at 9734. The superior court's conclusions included a series of decisions, all speaking to the egregiousness of Bolin's conduct:

- "The emails also expose the fact that Mr. Bolin's prior statements that he acted ethically when hiring Mr. Jensen, that he did not discuss prior [Tacoma RV] matters with Mr. Jensen, and that [Tacoma RV] was acting in bad faith in pursuing the Motion to Disqualify, are all false." DCP at 1694; RCP at 9734.
- "Bolin attempted to intimidate, harass, annoy, and falsely negate Tacoma RV's justified efforts to seek evidence related to this important issue." DCP at 1695.
- "Bolin filed several pleadings which he knew were not grounded in fact or law, claimed that no responsive documents existed, and has demonstrated an unbridled pattern of abusive litigation tactics." DCP at 1695.
- "Bolin lacked candor to this Court and in violation of CR 11 submitted pleadings and declarations to this Court which lack any basis in fact and indeed were intentionally false and done in bad-faith." DCP at 1694; RCP at 9734.

- "Bolin's attacks against [Tacoma RV] and its counsel have gotten worse over time as Mr. Bolin's misconduct continues to breed more misconduct, and all of these attacks constitute bad faith behavior that this Court will not tolerate from officers of the Court." DCP at 1691.

The superior court highlighted its concern about preserving the integrity of the legal system given the egregiousness of the Bolin's conduct, concluding that "the intentional and deceptive concealment of [Jensen's] hiring . . . would necessarily cause the public to perceive impropriety" if discovered and therefore "require[d] disqualification." DCP at 1694; RCP at 9733. Thus, the superior court ruled that pursuant to CR 11, "sanctions, including disqualification of Mr. Bolin, The Bolin Firm, and Mr. Jensen, are appropriate." DCP at 1694; RCP at 9734.

The superior court separately determined that Bolin's conduct attacking the defendants' counsel and trying to block discovery of the incriminating e-mails was "sanctionable, in bad faith, and provides an additional basis for disqualification as a sanction." DCP at 1690; RCP at 9734. "Bolin filed several pleadings which he knew were not grounded in fact or law, claimed that no responsive documents existed, and has demonstrated an unbridled pattern of abusive litigation tactics." DCP at 1695; *see* RCP at 9734. These conclusions formed the written basis for the superior court's earlier oral imposition of $50,000 sanction owed to one of the charitable legal foundations.

Bolin moved for reconsideration of both disqualification orders, which the superior court denied.

F.  TACOMA RV ATTORNEY FEES AND KEYSTONE MOTION FOR ATTORNEY FEES AS A SANCTION (NOVEMBER 2023-MARCH 2024)

In the disqualification orders, the superior court awarded Tacoma RV attorney fees and costs for most aspects of the disqualification proceedings in both cases. In the end, the court awarded Tacoma RV about $57,000 in fees and costs for the *Rinehart* matter and about $78,000

for the *Day* matter. The superior court required both assessments to be paid solely by Bolin and his firm, not the clients. Keystone, who was only a party to the *Rinehart* matter, was not initially awarded any fees or costs related to the disqualification.

1. Keystone's request for sanctions and initial denial

About one month later, in December 2023, Keystone moved for a sanction against Bolin in an amount equal to the entirety of Keystone's attorney fees and costs in *Rinehart*. Keystone asserted that it had expended more than $500,000 defending against Bolin's bad faith litigation tactics since the case began in 2021.

Keystone made this request under several grounds: the bad faith exception to the American rule; the statute pertaining to frivolous lawsuits, RCW 4.48.185; and two civil rules, CR 11 and CR 26(g). Keystone identified 13 specific items, from motions to discovery disputes, which contributed to the large amount of fees and which it argued constituted bad faith litigation conduct. In support of its request for a sanction equal to its total cost of defense, Keystone filed billing invoices that were redacted to omit attorney-client privileged information (unredacted invoices were provided to the superior court for in camera review) and a spreadsheet summarizing every attorney invoice it had paid during the *Rinehart* litigation.

In response, Bolin first argued that the superior court lacked jurisdiction to hear Keystone's motion because it had previously dismissed Rinehart's claims with prejudice back in August. He also asserted that the bad faith exception to the American rule and RCW 4.48.185 did not apply for a number of reasons, including that Bolin was not a party and that Rinehart's claims had not been found frivolous. Similarly, he argued that awarding the fees as a sanction under CRs 11 and 26 would be improper because, again, Rinehart's claims had not been found to be frivolous. At

the hearing itself, Bolin added a new argument that he had been given access to only redacted invoices, not the unredacted versions.

The superior court initially denied Keystone's sanction motion. It reasoned that although it retained jurisdiction over several issues when it dismissed Rinehart's claims, a motion for fees was not one of them.

Keystone moved for reconsideration, arguing that its request for a sanction was a direct result of the motion to disqualify, over which the superior court had retained jurisdiction. In opposing reconsideration, Bolin reiterated that Keystone's invoices were heavily redacted "thus depriving Bolin of due process, with no opportunity to make specific objections to the majority of the fees claimed . . . ." RCP at 10789.

The superior court granted reconsideration. The superior court concluded that it "retain[ed] jurisdiction under its inherent authority, and under the civil rules, . . . notwithstanding the dismissal of Plaintiffs claims in this matter." RCP at 10833.

2. Revised ruling on Keystone's sanction request

On the merits, the superior court ruled that Bolin should be sanctioned based on many "fraudulent" actions. RCP at 10839. The superior court began by finding that, before Bolin filed Rinehart's complaint, Bolin made several dubious claims against Keystone, such as requests for incidental and consequential damages that were expressly excluded from Keystone's warranty. The superior court found that Bolin signed, served, and filed the *Rinehart* complaint after Keystone refused to accept Rinehart's unreasonable pre-suit demand. The superior court found that, at that time, Bolin was litigating five other cases against Keystone. And in all five of those cases, the claims against Keystone were dismissed on summary judgment, and any claims that were appealed were affirmed.

29

The superior court also found that Bolin engaged in egregious discovery behavior, initially making "over 122 discovery requests" to Keystone in *Rinehart*, "most of which had nothing to do with the claims Rinehart was then pursuing . . . and many of which related instead to claims Mr. Bolin was pursuing on behalf of other plaintiffs against Keystone in the ancillary matters." RCP at 10819. The superior court concluded that "[o]ver the ensuing year-and-a-half . . . Mr. Bolin conducted litigation in bad faith, as described" in the disqualification orders. RCP at 10820.

The superior court entered specific findings about the amounts Keystone incurred for each item on its 13-item list, plus other instances of Bolin's misconduct, such as amounts Keystone's counsel incurred defending against the WSBA grievance that Bolin filed rather than reporting his own conduct to the WSBA in September 2023.[5] In total, the court calculated that Keystone incurred approximately $176,000 in fees and costs from specific instances of Bolin's conduct that violated CR 11 or CR 26(g). And it observed that the sum from those items "still represents less than half of what Keystone incurred to defend itself against the bad faith litigation tactics that Mr. Bolin employed 'throughout this proceeding.' " RCP at 10838. "[B]ecause Mr. Bolin's 'entire course of conduct throughout the lawsuit evidenced bad faith . . . restitution of only these fees and costs would be an inadequate punishment and deterrent and would ultimately constitute a miscarriage of justice." RCP at 10838 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 51, 111 S. Ct. 2123, 115 L. Ed 2d 27 (1991)).

---

[5] The superior court found that "Bolin brought these issues into the province of this Court by filing his grievance in this Court on September 25, 2023, which was the date that this Court ordered Mr. Bolin to report on his own conduct and the facts and circumstances underlying the Motion to Disqualify." RCP at 10830-31. "Bolin filed a grievance against counsel for Keystone on this date instead of reporting to the WSBA as ordered by this Court." RCP at 10831.

Beyond the fees and costs incurred from specific instances of Bolin's misconduct, "Keystone's total costs of defense in this matter," was about $500,000 according to the superior court. RCP at 10831. From the fees and costs statements submitted for review, the superior court found "that all of these expenses . . . were reasonable, and unfortunately necessary expenditures, to deal with the bad faith litigation tactics of Mr. Bolin." RCP at 10831-32.

The superior court found that "Keystone's costs of defense as a whole are reflective of, and were substantially inflated by[,] Mr. Bolin's bad faith." RCP at 10832. The court then found that Bolin was a vexatious litigant who "committed himself to harming Keystone" and "succeeded in doing so, by deliberately and inescapably causing Keystone to incur increased litigation costs related to every engagement with him." RCP at 10832. Critically, the superior court observed that "Bolin's oppositional pleadings tended to lack legal or factual support in favor of superficial/technical arguments, like alleged failures to confer—which Keystone disputed, and which led multiple Defendants to begin transcribing CR 26 conferences with Mr. Bolin—or advanced accusations and other unfounded theories in the place of well-grounded arguments." RCP at 10837.

The superior court similarly concluded that Bolin's prelitigation behavior was conducted in bad faith.

> The Court has previously found that Mr. Bolin acted in bad faith 'throughout this proceeding,' which is a conclusion that the Court now hereby extends to Mr. Bolin's conduct during the pre-litigation period and to the filing of the Complaint itself.

RCP at 10833.

The superior court concluded that the *Rinehart* complaint "was not well ground[ed] in fact or warranted by existing law" because it alleged causes of action, specifically warranty claims,

31

"which Mr. Bolin knew not to be true." RCP at 10833. The court concluded that Rinehart's claims were "frivolous as defined in RCW 4.84.185." RCP at 10836. It also concluded the manner in which Bolin pursued Rinehart's claims "was oppressive, harassing, and abusive so as to be vexatious as that term is defined and used under the law of this State." RCP at 10835. The superior court observed that although it had repeatedly sanctioned Bolin for his misconduct throughout the proceedings, he had not been deterred from bad faith vexatious litigation.

The superior court also concluded that RCW 4.84.185, CR 11, and CR 26(g) each had limits on the superior court's ability to sanction Bolin. Thus, "considering the frequency and severity of Mr. Bolin's abuses of the judicial system, the need to ensure that such abuses are not repeated, and the extraordinary costs that Keystone had incurred," the superior court decided to invoke its "inherent power" to sanction Bolin, rather than rely on those statutes and rules. RCP at 10840.

In the end, the superior court ordered Bolin, as a sanction, to pay Keystone an amount equal to 75 percent of its attorney fees and costs from *Rinehart*, roughly $376,000. The superior court stated that the sanction "addresses Mr. Bolin's abuses of the judicial system in this case, as outlined in these findings, and also serves to educate and deter the future use of such abusive litigation tactics in our system of justice not only in Pierce County Superior Court but state-wide." RCP at 10840.

Bolin separately appeals the two disqualification orders from the *Day* litigation and the *Rinehart* litigation. Bolin also appeals the orders awarding attorney fees to Tacoma RV for both *Rinehart* and *Day*, and the order sanctioning Bolin an amount equal to 75 percent of Keystone's total fees and costs for the *Rinehart* litigation. A commissioner of this court consolidated the appeals.

ANALYSIS

As a threshold matter, Bolin does not challenge any of the superior court's factual findings on any of the orders he appeals. Bolin argues that this court must reverse the disqualification, attorney fees, and sanction orders "as a matter of law even if their inadequately supported findings of fact were considered verities for the purposes of this appeal." Br. of Appellant at 5 (emphasis omitted). Although Bolin alludes to disagreeing with the findings, he suggests that he need not "consume this Court's time detailing Appellant's disagreement with the trial court's factual findings and how many of its findings of fact lack the substantial evidence required to be upheld on appeal." *Id.* (emphasis omitted). Regardless of his reasons, because Bolin does not assign error to any of the superior court's findings of fact on any of the orders, all of its findings are verities on appeal. *Jensen v. Lake Jane Estates*, 165 Wn. App. 100, 105, 267 P.3d 435 (2011).

These findings, now deemed to be true, provide the foundation for our analysis. We begin first with Bolin's challenge to the two orders of disqualification for both *Rinehart* and *Day*, separating our discussion into the two bases used by the superior court—the RPCs and CR 11. We then move to our analysis of the related orders awarding fees and sanctions.

I. DISQUALIFICATION

Although *Rinehart* and *Day* are separate cases, we consider most of Bolin's challenges to the two disqualification orders together, not only because the cases have been consolidated for the purposes of appeal, but also because no party provides any basis to distinguish between the two cases for the purposes of their arguments. The exception is Bolin's mootness arguments about the *Rinehart* order, discussed below.

A.  MOOTNESS OF THE *RINEHART* DISQUALIFICATION

Bolin argues his disqualification in *Rinehart* was rendered moot both because he withdrew from the case and because Rinehart's claims were dismissed with prejudice after she moved for voluntary dismissal.  This argument applies only to *Rinehart* because Bolin was still representing Day when the motion for disqualification was granted.

Tacoma RV and Keystone respond that the *Rinehart* disqualification was not moot.  But even if it was, Tacoma RV emphasizes that caselaw supports disqualifying attorneys even when doing so is technically moot.  We agree.

Voluntary dismissals under CR 41(a)(1)(B) generally deprive courts of authority to decide cases on their merits, but courts may still consider the collateral issue of a motions for sanctions.  *Clare v. Telquist McMillen Clare PLLC*, 20 Wn. App. 2d 671, 680, 501 P.3d 167 (2021).  "CR 11 sanctions do not constitute a judgment on the merits; rather, the rule requires a determination of the collateral issues of whether an attorney abused the judicial process and what sanction would be appropriate."  *Id.*  "Thus, jurisdiction can remain to hear sanctions even years after entry of judgment on the merits," but "the sanctionable conduct must have occurred before the case was dismissed."  *Id.*  And our Supreme Court has explained that a "violation of Rule 11 is complete upon the filing of the offending paper; hence, an amendment or withdrawal of the paper, or even a voluntary dismissal of the suit, does not expunge the violation."  *Biggs v. Vail*, 124 Wn.2d 193, 199-200, 876 P.2d 448 (1994); *see also In re Marriage of Wixom*, 182 Wn. App. 881, 901, 332 P.3d 1063 (2014) ("No principle of law excuses an attorney from a conflict with a client because a court may later issue a ruling that renders the conflict moot.").

We agree with the respondents that Bolin's withdrawal from, and the dismissal of, the *Rinehart* case did not render the issue moot or remove the superior court's authority to hear the

34

motions for disqualification. Bolin's sanctionable conduct occurred before both the withdrawal and the dismissal. Bolin withdrew as counsel for Rinehart on July 2, and the entire *Rinehart* case was dismissed on August 11. Yet, numerous instances of Bolin's bad faith and wrongful conduct found by the superior court (all of which are considered verities on appeal) occurred earlier. Thus, the superior court clearly retained jurisdiction over the disqualification proceedings.[6] *Clare*, 20 Wn. App. 2d at 680. While it is plausible that Bolin's early withdrawal from the *Rinehart* case would be relevant to the determination of an appropriate sanction, it does not affect (or render moot) the superior court's authority to decide the motions for disqualification.

As stated above, we consider the remainder of Bolin's challenges to the *Rinehart* and *Day* disqualification orders together.

B. DISQUALIFICATION UNDER RPC 1.9 AND 1.10

We begin by addressing the superior court's basis for disqualification under RPC 1.9 and 1.10. Bolin argues this was error because *Rinehart* and *Day* were not substantially related to Jensen's prior cases for Tacoma RV. Bolin contends that the superior court's reliance on the similarities between the CPA claims for each case was error. He contends that "RPC 1.9 requires proof of substantial factual relatedness," while the similarities between the cases here were mere

---

[6] For the first time in his reply, Bolin argues that his disqualification became moot when the superior court ordered Bolin to report his conduct to the WSBA. Bolin contends that because our Supreme Court has the exclusive responsibility to administer lawyer discipline, the superior court lost that ability once the matter was referred. Because Bolin failed to raise this argument earlier, we decline to address it. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) ("An issue raised and argued for the first time in a reply brief is too late to warrant consideration."). But even if we were to address it, we note that superior courts have the authority to disqualify lawyers when "counsel should not serve because of a conflict with another client." *Wixom*, 182 Wn. App. at 904; *see also In re Firestorm 1991*, 129 Wn.2d 130, 140, 916 P.2d 411 (1996). This authority is different from the disciplinary sanctions of suspension and disbarment which are available to only the Supreme Court, *see* ELC 2.1 and 13.1 (neither of which were at issue in this case).

"legal relatedness." Br. of Appellant at 29 (emphasis omitted). He emphasizes that a finding of substantial relatedness "cannot be based on any information regarding Tacoma RV that is publicly available" or "general knowledge concerning Tacoma RV or its reputation doing business in the local Puget Sound area." Br. of Appellant at 30. In his reply, Bolin produces a chart of the different defects alleged in each RV to demonstrate what he considers to be the factual differences between the four cases.

In response, Tacoma RV emphasizes that factual similarities are only part of determining whether matters are substantially related.[7] Tacoma RV points out that, under comment 3 of RPC 1.9, matters are substantially related even if there is only a *substantial risk* that confidential factual information that a lawyer would normally obtain during the first representation would materially advance the later client's position. Tacoma RV points to the superior court's finding that the facts underlying all four cases, and specifically those that formed the basis for the CPA claims, were "nearly identical." Br. of Tacoma RV at 28-29. Tacoma RV reasons that the superior court properly "(1) evaluated the claims in each case, (2) identified the facts which formed their bases, (3) determined there was a 'substantial risk' that Mr. Jensen obtained 'confidential factual information' that would 'materially advance' the *Day* and *Rinehart* case, and (4) concluded that therefore, the cases were substantially related." Br. of Tacoma RV at 31. It lists several items, including the Jensen e-mails and Bolin privilege log, that illustrate the risk that Jensen shared confidential information. We agree with Tacoma RV.

---

[7] Keystone defers to Tacoma RV's arguments for this issue.

1. Rules of professional conduct and standards of review

As noted above, RPC 1.9 limits when a lawyer may oppose a former client without the former client's informed consent. The rule generally prohibits a lawyer from representing a person adverse to a former client when the matters are "substantially related":

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a *substantially related matter* in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
>
> (b) A lawyer shall not knowingly represent a person in the same or a *substantially related matter* in which a firm with which the lawyer formerly was associated had previously represented a client
>
> > (1) whose interests are materially adverse to that person; and
> >
> > (2) about whom that lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client gives informed consent, confirmed in writing.

(emphasis added). RPC 1.9(c) prohibits lawyers from revealing information related to their representation of the prior client, except as required or permitted by other RPCs, and from using that information to the former client's disadvantage.

The comments to the rule further explain what is meant by "substantially related." Matters are substantially related "if they involve the same transaction or legal dispute *or* if there otherwise is a *substantial risk* that confidential factual information *as would normally have been obtained* in the prior representation would *materially advance* the client's position in the subsequent matter." RPC 1.9 cmt. 3 (emphasis added). In particular, comment 3 establishes that for "an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation; on the other hand, *knowledge of specific facts gained in a prior representation that are relevant to the matter in question* ordinarily will preclude such a representation." RPC 1.9 cmt. 3 (emphasis added).

37

RPC 1.10 works in tandem with RPC 1.9 to prohibit lawyers in a firm from representing a client "when any one of them practicing alone would be prohibited from doing so" under RPC 1.9. When a lawyer is prohibited from representing a client under RPC 1.9(a) or (b), no other lawyer from that firm may knowingly represent the person "in a matter in which that lawyer is disqualified unless" specific notification and screening conditions are met. RPC 1.10(e). Nothing in our record shows that these RPC 1.10(e) notification procedures were followed in this case.

Courts may enforce these RPCs through disqualification of counsel. *Wixom*, 182 Wn. App. at 904 (listing federal cases where courts disqualified counsel for conflicts of interest). "A court has not only the right[,] but also the duty to safeguard ethical practice as part of its inherent power to supervise its own affairs." *Id.*

The "former client who seeks to disqualify an adverse party's lawyer" bears the burden of demonstrating that the matters are substantially related under RPC 1.9. *Plein*, 195 Wn.2d at 686.

When disqualification is sought for violations of the RPCs, we review a superior court's order in two steps. First, "[w]hether attorney conduct violates the relevant RPCs is a question of law, which we review de novo." *State v. Nickels*, 195 Wn.2d 132, 136, 456 P.3d 795 (2020). "Second, if a violation is found, we assess whether disqualification is an appropriate remedy." *Hur v. Lloyd & Williams, LLC*, 25 Wn. App. 2d 644, 649, 523 P.3d 861 (2023). We review the superior court's remedy for abuse of discretion, "keeping in mind that disqualification is a drastic sanction that should be limited to egregious violations." *Id.* A superior court abuses its discretion "if 'the court, despite applying the correct legal standard to the supported facts, adopts a view that no reasonable person would take.' " *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006) (internal quotation marks omitted) (quoting *State v. Rohrich,* 149 Wn.2d 647, 654, 71 P.3d 638 (2003).

This court may affirm a superior court's conclusions "on any basis supported by the record." *O'Dea v. City of Tacoma*, 19 Wn. App. 2d 67, 79, 493 P.3d 1245 (2021). Credibility determinations are for the trier of fact, here the superior court, and are not subject to appellate review. *McCallum v. Allstate Prop. & Cas. Ins. Co.*, 149 Wn. App. 412, 427, 204 P.3d 944, *review denied*, 166 Wn.2d 1037 (2009).

2. Cases interpreting RPC 1.9 and 1.10

The Washington Supreme Court amended the RPCs in 2006. Since then, our Supreme Court has interpreted RPC 1.9's term "substantially related" in only one case, *Plein v. USAA Casualty Insurance Company*.

In *Plein*, a team of lawyers within a firm represented an insurance company, USAA, between 2007 and 2017, handling roughly 165 matters. 195 Wn.2d at 680. The team defended USAA and its subsidiaries against claims of insurance bad faith in several cases. *Id*. at 681. The Pleins then hired two attorneys from a different group of lawyers at the firm to represent them in a lawsuit against USAA alleging insurance bad faith. *Id*. at 682. USAA moved to disqualify the firm from representing the Pleins under RPC 1.9 and 1.10. *Id*. at 682-83. The superior court, based on "briefing and unrebutted declarations," concluded that the Pleins' lawsuit was factually distinct from, and therefore not substantially related to, the firm's prior representation of USAA. *Id*. at 683.

Our Supreme Court agreed with the superior court and held that RPC 1.9(a) did not prohibit the firm from representing the Pleins against USAA. *Id.* at 683, 698. The court explained that, to be substantially related, matters must be "factually related." *Id.* at 691. The court recited with approval a "factual context" test that was used before the 2006 amendments. *Id.* at 688. Under that test, to determine if two matters were substantially related, a court would " '(1) reconstruct

the scope of the facts of the former representation, (2) assume the lawyer obtained confidential information from the client about all these facts, and (3) determine whether any former factual matter is sufficiently similar to a current one that the lawyer could use the confidential information to the client's detriment.' " *Id.* (emphasis omitted) (quoting *Sanders v. Woods*, 121 Wn. App. 593, 598, 89 P.3d 312 (2004)).

With its approval of the factual context test, the court rejected two other approaches: the "playbook" approach, where general representation of a client could provide "greater insight and understanding" of subsequent events and promising discovery; and the "duty of loyalty" approach, which implied a "general duty of loyalty to never litigate against a former client." *Id*. at 695-96. Because the superior court in that case had determined that *Plein* was " 'factually distinct from' " the firm's prior representation of USAA based on *undisputed* facts, the Supreme Court held that the matters were not substantially related, and disqualification therefore was not required. *Id.* at 683, 695.

No published Washington case has analyzed RPC 1.9 since *Plein* was issued. But two federal district courts have cited *Plein* while determining that matters were substantially factually related under RPC 1.9 or identical counterpart rules. *Gnaciski v. United Health Care Ins. Co.*, 623 F. Supp. 3d 959, 962 (E.D. Wis. 2022); *see also Docklight Brands Inc. v. Tilray Inc.*, No. 2:21-CV-01692-TL, 2023 WL 5279309, at *4 (W.D. Wash. Aug. 16, 2023).

In *Gnaciski*, the plaintiff sued Walmart after falling in one of its stores. 623 F. Supp. 3d at 962. The plaintiff hired an attorney who had previously defended Walmart in more than 70 premises liability cases, 31 of which involved falls related to liquid on the floor. *Id*. at 968. Walmart moved to disqualify the attorney under Wisconsin's Supreme Court Rule 20:1.9 (which is identical to Washington's RPC 1.9). *Id.* at 962, 965-66. The plaintiff opposed disqualification,

citing *Plein* to argue that the defendants were seeking disqualification under the "playbook approach," which was disfavored by that case. *Id.* at 964-65. The district court rejected the plaintiff's reliance on *Plein* and determined that the plaintiff's attorney had " 'intimate knowledge' of the defendants' case management guidelines, settlement pay ranges, 'proclivities,' litigation strategies, negotiation strategies, hierarchies in settlement authority[,] and non-public information about store operations, as well as confidential internal documents." *Id.* at 971. "That information is more detailed and case-specific than simply the strategies that a retail store might take in tort litigation." *Id.* And the attorney's possession of that knowledge was problematic because the attorney's very recent "experience working on slip-and-fall cases on behalf of Walmart directly relates to this case." *Id.* at 970. Thus, the district court determined that the cases were substantially related and disqualified the attorney. *Id.* at 971.

3. Analysis

Here, the superior court determined that Bolin should be disqualified because, under the substantial risk standard, described in RPC 1.9 comment 3, *Rinehart* and *Day* were substantially related to *Mielke* and *Maldonado*. To determine whether this decision was error, we examine de novo whether there was a substantial risk that confidential information Jensen would normally have obtained during his representation in *Mielke* and *Maldonado* would materially advance Rinehart and Day's positions. RPC 1.9, cmt. 3; *Plein*, 195 Wn.2d at 690.

We first observe that Jensen, representing Tacoma RV and Meadows, settled *Mielke* with Bolin about six months before Bolin offered Jensen a job. And Tacoma RV's owner Meadows filed a declaration explaining that, while defending *Mielke* and *Maldonado*, Jensen obtained confidential knowledge about Tacoma RV's "internal policies, procedures, and activities and . . . litigation strategy . . . ." RCP at 3813. Further, all four cases raised CPA claims with very similar

allegations, including that Tacoma RV used deceptive advertising, and that Tacoma RV salespeople misled or deceived the plaintiffs about the extent of warranty coverage and the suitability for prolonged occupancy of the RVs they purchased.

Included within our de novo examination are the superior court's unchallenged findings of fact, which are now deemed true. *See Jensen*, 165 Wn. App. at 105. Relevant to our question, the superior court found that Jensen obtained confidential factual information about Tacoma RV and during his representation in *Mielke* and *Maldonado*, including when he prepared Meadows to be deposed by Bolin. The superior court also found that "the facts forming the basis" of the CPA claims in *Day* and *Rinehart* were "nearly identical" to those in *Mielke* and *Maldonado*. RCP at 9725-26; DCP at 1687-89.

The superior court found that the claims overlapped between the cases. In an unchallenged finding, the superior court found that "Bolin has sought discovery in each case regarding other lawsuits or complaints against Tacoma RV because he has stated that the facts in those other cases are related and relevant" to his clients' CPA claims. DCP at 1688; RCP at 9725. Bolin's assertion that each case featured defects in the plaintiff's RV that were not necessarily present in the other three RVs cannot now change the verity that the facts forming the basis for each CPA claim were "nearly identical." And the CPA claims in all four cases were based on allegations that Tacoma RV employees made deceptive representations about the risks of living in an RV for an extended period and the extent of warranty coverage.

The information Jensen would have obtained in the normal course of defending Tacoma RV in *Mielke* and *Maldonado* was plainly more detailed and case-specific than mere general information about how Tacoma RV defended against CPA lawsuits. *See Gnaciski*, 623 F. Supp. 3d at 970. In fact, the superior court found that Jensen obtained confidential information about

Tacoma RV's advertising and sales practices while preparing Meadows to be deposed. And Jensen almost certainly learned about Tacoma RV's settlement practices while negotiating the settlement in *Mielke*.

How Tacoma RV advertised to potential clients, performed repair work, and determined whether to settle CPA claims based on those details were all highly relevant to the issues in *Day* and *Rinehart*. To be sure, it is difficult to imagine how confidential factual information about those subjects would *not* have advanced Day and Rinehart's claims, particularly when *Mielke* had already resulted in a large settlement for the plaintiffs. RPC 1.9 cmt. 3; *Plein*, 195 Wn.2d at 690. Moreover, Jensen's experience on *Mielke* and *Maldonado* was extremely recent—to the point where *Maldonado* was ongoing when Zurich ended Jensen's employment.

Under the correct application of RPC 1.9, matters do not need to share the exact transaction or legal dispute in order to be substantially related. RPC 1.9 cmt. 3. Again, if there is a *substantial risk* that confidential information a lawyer would *normally obtain* while representing their prior client would *materially advance* the subsequent client's position, then the matters are substantially related and the attorney cannot represent the subsequent client. RPC 1.9 cmt. 3. And "*knowledge of specific facts gained in a prior representation that are relevant to the matter in question*" will preclude representation. RPC 1.9 cmt. 3 (emphasis added); *Plein*, 195 Wn.2d at 690.

Applying this standard here, we hold that there was a substantial risk that confidential factual information Jensen would normally have obtained while representing Tacoma RV in *Mielke* and *Maldonado* would advance Day and Rinehart's CPA claims. RPC 1.9 cmt. 3. Jensen's recent experience defending and then settling CPA claims based on allegations about Tacoma RV's advertising, sales tactics, and repair work would invariably have resulted in Jensen learning *specific facts* (not just a "greater insight and understanding") relevant to Day and Rinehart's CPA

43

claims that were based on allegations about Tacoma RV's advertising, sales tactics, and repair work. *Plein*, 195 Wn.2d at 695-96. And because Tacoma RV and Meadows never consented to Jensen's representation of Day or Rinehart, he would be barred from working on those cases. RPC 1.9(a). Finally, because RPC 1.9 prohibited Jensen's representation of those clients, RPC 1.10(a) likewise prohibited Bolin from representing them as well once he hired Jensen.

This holding is not inconsistent with *Plein*. There, the foundation of the Supreme Court's holding that the matters were not substantially related was the superior court's determination based on *undisputed* facts that the Pleins' case was factually distinct from the firm's prior representation of USAA. *Plein*, 195 Wn.2d at 683, 695. Here, the opposite is true; it is a verity that, as found by the superior court, the facts forming the basis for each CPA claim (allegations that Tacoma RV employees made false and misleading statements about warranty coverage and the risk of long-term RV occupancy) were "nearly identical."

In fact, Jensen's representation of Tacoma RV was far more similar to the representation at issue in *Gnaciski* than in *Plein*. Jensen's knowledge was "more detailed and case-specific than simply the strategies that" an RV dealership would take to defend against CPA claims. *Gnaciski*, 623 F. Supp. 3d at 971. In particular, Jensen had recent and detailed knowledge about how Tacoma RV decided to settle the nearly identical claims against it in *Mielke* for roughly $170,000. Following the factual context test approved in *Plein*, if we assume that Jensen obtained confidential information about how Tacoma RV defended against—and decided to settle—the claims from the *Mielke* and *Maldonado* cases, then it is clear that Jensen could use those specific facts to Tacoma RV's detriment in the *Rinehart* and *Day* cases. *See Plein*, 195 Wn.2d at 690.

Having concluded de novo that Bolin and Jensen violated RPC 1.9 and 1.10, we next consider whether the superior court's chosen sanction of disqualification was an abuse of discretion. *Hur*, 25 Wn. App. 2d at 649. It was not.

Taking the superior court's undisputed findings as true, Bolin and Jensen's conduct was egregious. Jensen and Bolin not only appeared to recognize that they were in dangerous ethical waters, but they actively sought to conceal the fact of Jensen's hiring and work on the *Rinehart* case from Tacoma RV and the rest of the world, including the WSBA. Bolin was apparently so committed to this course that he denied the existence of any improper communications for six months, sought to quash subpoenas, accused opposing counsel of CR 11 and ethical violations as well as criminal conduct, and forced the superior court to issue a direct order before he produced a privilege log that disclosed 29 e-mails to and from Jensen regarding work product or attorney-client-privileged materials on *Rinehart*. Bolin and Jensen's conduct constituted the exact sort of "egregious violations" that merit disqualification. *Id.*

Under these facts, we cannot say that no reasonable court would have concluded that disqualification was the appropriate sanction. *Mayer*, 156 Wn.2d at 684. Thus, we hold that the superior court did not abuse its discretion by disqualifying Bolin and Jensen for their ethical violations.

C. DISQUALIFICATION UNDER CR 11

1. CR 11 was an independent basis for disqualification

Bolin also challenges the superior court's alternative basis of using CR 11 for disqualification. Aside from Bolin's general argument that none of the cases are substantially related, he argues that CR 11 is especially inapplicable because RPC 1.9 and 1.10 are more specific and, therefore, should control under principles of statutory construction. Wrongfully assuming he

prevails under an application of RPCs 1.9 and 1.10, Bolin asserts that because "no disqualifying conflict existed under the specific court rule governing conflict of interest situations," then "disqualification cannot be rationalized by using a general court rule instead." Br. of Appellant at 31-32 (emphasis omitted).

Tacoma RV and Keystone reject the applicability of the specific versus general rule, arguing that it applies only to conflicting statutes. They also contend that RPC 1.9 and CR 11 do not conflict, or even serve the same purpose, because one rule protects client confidences while the other "is to deter baseless filings and to curb abuses of the judicial system." Br. of Tacoma RV at 46; *see* Br. of Keystone at 40-41. And Tacoma RV notes that our Supreme Court has, in the past, affirmed sanctions under both the RPCs and CR 11.

We agree with the respondents that courts are not bound to sanction conduct under only the RPCs when CR 11 also applies. *In re Disciplinary Proceeding Against Eugster*, 166 Wn.2d 293, 317, 326, 209 P.3d 435 (2009). RPC 1.9/1.10 and CR 11 are designed to punish different conduct, so the superior court could conceivably have found no RPC violation but still sanctioned Bolin for his conduct that violated CR 11 or vice versa. Here, the superior court's consideration of both sets of rules make sense: while Bolin's hiring of Jensen and his work on *Rinehart* were the foundation of the RPC 1.9 and 1.10 violations, Bolin's obstructing the discovery of that information was the separate basis of the alleged CR 11 violations.[8]

---

[8] At oral argument, Bolin also referenced *Washington State Physicians Insurance Exchange & Association v. Fisons Corporation*, 122 Wn.2d 299, 858 P.2d 1054 (1993), to support his position that if RPCs 1.9 and 1.10 apply, CR 11 cannot also apply. Bolin's reliance on *Fisons* is misplaced. There, the defendants failed to disclose so-called "smoking gun" evidence for four years, until a month before trial. 122 Wn.2d at 337. The plaintiffs "asked that sanctions be awarded pursuant to CR 11, CR 26(g), CR 37(d), or the inherent power of the court." *Id*. at 339. The Supreme Court explained that CR 11 and 37 did not control a motion for sanctions based on discovery abuses "[b]ecause CR 26(g), the discovery sanctions rule, was adopted to specifically address the type of

2. Merits of the CR 11 disqualification

Having concluded that the superior court had authority to consider Bolin's disqualification under CR 11, we turn to the merits. Bolin argues that the superior court erred because the superior court considered CR 11 sanctions by using a test from a non-Washington, Eleventh Circuit case, *Cox v. American Cast Iron Pipe Company*, to conclude that Bolin violated CR 11. Bolin also defends his pleadings, contending that they "were to the best of [his] reasonable knowledge (1) well grounded in fact, (2) warranted by existing law, and (3) not interposed for an improper purpose." Br. of Appellant at 35 n.68 (emphasis omitted). Finally, he argues that disqualification under CR 11 is permissible only if it is " 'absolutely necessary,' " and here, it was not necessary because Bolin had already withdrawn. Br. of Appellant at 38 (quoting *In re Firestorm 1991*, 129 Wn.2d 130, 140, 916 P.2d 411 (1996)); Reply Br. at 22.

Tacoma RV responds that the superior court properly exercised its authority to disqualify Bolin under CR 11. It argues that Bolin clearly violated CR 11 by attempting to conceal Jensen's involvement in *Rinehart*. And Tacoma RV reasons that, while *Cox* is not binding, it was not legal error for the superior court to cite the case because the superior court was certainly allowed to consider Bolin's improper conduct and the likely public perspective of that conduct in finding a CR 11 violation and fashioning a sanction. Keystone likewise argues that the superior court did not abuse its discretion in disqualifying Bolin under CR 11 and asserts that disqualification was necessary because repeated lesser sanctions had not deterred him. Based on the extensive, unchallenged findings from the superior court, we agree with the respondents.

---

conduct involved" in that case. *Id*. at 340. Importantly, the same conduct—failing to participate in the discovery process in good faith—formed the basis for a request for sanctions under all three rules in that case. Here, consistent with different purposes of the RPCs and CR 11, different aspects of Bolin's conduct support sanctions under both sets of rules.

a. Legal principles

CR 11 provides that "[e]very pleading, motion, and legal memorandum of a party represented by an attorney shall be dated and signed by at least one attorney of record." CR 11(a). The attorney's signature is a certificate that the attorney has read the document and that to the best of their "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," (1) the document is "well grounded in fact," (2) the document "is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law," (3) the document "is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation," and (4) "the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief." CR 11(a)(1)-(4). If such a document "is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it . . . an appropriate sanction . . . ." CR 11(a)(4).

And if a CR 11 violation has occurred, "the rule makes the imposition of sanctions mandatory." *Doe v. Spokane & Inland Empire Blood Bank*, 55 Wn. App. 106, 110, 780 P.2d 853 (1989). But disqualification is certainly not mandatory; it is a "drastic remedy that exacts a harsh penalty from the parties as well as punishing counsel; therefore, it should be imposed only when absolutely necessary." *Firestorm 1991*, 129 Wn.2d at 140. However, when counsel has access to privileged information of an opposing party, the "drastic remedy" of disqualification may be appropriate. *Id.* "Requiring disqualification after counsel has had access to privileged information preserves the public's confidence in the legal profession." *Id.*

"The determination whether a violation of CR 11 has occurred is vested in the sound discretion of the trial court." *Doe*, 55 Wn. App. at 110. We also review a superior court's chosen

48

sanction for a CR 11 violation for abuse of discretion. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 338, 858 P.2d 1054 (1993). A superior court abuses its discretion if its decision is based on untenable grounds or reasons. *Clare*, 20 Wn. App. 2d at 681.

b. Analysis

We first consider whether the superior court abused its discretion by determining that a CR 11 violation occurred. The unchallenged facts establish numerous instances of egregious conduct by Bolin, including the following:

- Bolin and Jensen hid Jensen's hiring from Tacoma RV, the WSBA, and the public, going "so far as to delay changing Mr. Jensen's address on the WSBA website in furtherance of this effort." DCP at 1685; RCP at 9722-23.
- Jensen provided input on *Rinehart*, despite Bolin and Jensen repeatedly claiming that Jensen did not do any work on cases against Tacoma RV and acknowledging in an internal screening memo that Jensen should not work on those cases.
- Bolin's claim that he and Jensen implemented "an ethical wall to ensure that Mr. Jensen was not included in [*Rinehart*], did not discuss [*Rinehart*], and had no communications with members of The Bolin Firm regarding Tacoma RV or [*Rinehart*]" was "false in light of the emails produced by Mr. Jensen . . . and the 29 entries on the privilege log provided by Mr. Bolin." DCP at 1685-86; RCP at 9723.
- "Bolin weaponized discovery . . . in a way the Court has rarely, if ever, seen, and [has] exhibited a lack of candor which is concerning." RCP at 9728.
- When Tacoma RV sought discovery about Jensen's hiring and work on *Rinehart*, Bolin "claimed several times that no responsive documents to the subpoenas existed," that Tacoma RV was "on a fishing expedition, acting in bad faith, and violating multiple ethical rules . . . by seeking this discovery," and threatened to file a bar complaint against Tacoma RV's counsel. DCP at 1683; RCP at 9720. As a result, Bolin "violated the Supreme Court's edict in *Fisons Corp.* that discovery be accomplished in the spirit of cooperation and forthrightness." DCP at 1691.
- "Bolin acted in bad faith throughout [the *Day* and *Rinehart*] proceeding[s]." DCP at 1691; RCP at 9728. In particular, Bolin's "continued baseless allegations that [Tacoma RV] and its counsel [had] violated ethical rules in issuing the subpoenas and pursuing discovery" were "made for an improper purpose to shield his own misconduct." DCP at 1691.

49

These verities establish that Bolin deliberately concealed his hiring of Jensen and Jensen's work on *Rinehart*—which we have already concluded violated RPC 1.9 and 1.10. Bolin then made multiple false and misleading statements to both opposing counsel and the court, from claiming that no documents responsive to subpoenas existed (they did), to stating that Jensen did no work on *Rinehart* (he did), to arguing that opposing counsel was violating ethical rules by seeking discovery about Jensen's hiring (all evidence points to the contrary).

These findings readily support a conclusion that Bolin violated CR 11. CR 11 prohibits filing documents to harass, cause unnecessary delay, or increase the cost of litigation—the superior court's unchallenged findings show Bolin violated *each* of those prohibitions. CR 11(a)(3). Thus, the superior court did not abuse its discretion by ruling that Bolin violated CR 11.[9] *Doe*, 55 Wn. App. at 110.

We next consider whether the superior court abused its discretion by disqualifying Bolin as a result of his CR 11 violations. *Fisons Corp.*, 122 Wn.2d at 338. The circumstances of Jensen's hiring, and the manner and lengths to which Bolin went to prevent opposing parties and the court from learning of Jensen's hiring or work on *Rinehart*, make it highly probable that Bolin acquired confidential information about Tacoma RV. And although our Supreme Court has said that disqualification should only result when "absolutely necessary," it has also made clear that "[o]ne situation requiring the drastic remedy of disqualification arises when counsel has access to

---

[9] We reject Bolin's argument that the superior court's reference to the Eleventh Circuit decision in *Cox* created an error. The superior court appeared to cite *Cox* because *Plein* briefly referred to the case. *Plein*, 195 Wn.2d at 686. Merely because the superior court found *Cox* to be useful when evaluating the impact of various potential sanctions on the public's perception of misconduct, it does not follow that the superior court somehow misapplied the law. And, in any event, we may affirm the superior court's conclusions on any basis supported by the record. *O'Dea v. City of Tacoma*, 19 Wn. App. 2d, 67, 79, 493 P.3d 1245 (2021). We see no error.

privileged information of an opposing party." *Firestorm 1991*, 129 Wn.2d at 140. Moreover, even if Bolin never used any of this privileged information for future litigation, the superior court found an additional basis for finding that disqualification was "necessary." *Id.* As the superior court explained, Bolin's "intentional and deceptive concealment of [Jensen's] hiring . . . would necessarily cause the public to perceive impropriety" if discovered and therefore "require[d] disqualification." DCP at 1694; RCP at 9733. Under the undisputed facts, it was not untenable for the superior court to use these bases, including preserving the integrity of the legal system, to disqualify Bolin as a sanction for his CR 11 violations. *Clare*, 20 Wn. App. 2d at 680. Thus, we hold that the superior court did not abuse its discretion by disqualifying Bolin from *Day* and *Rinehart* under CR 11.

II. ATTORNEY FEES AND SANCTION ORDERS BELOW

A. TACOMA RV FEE AWARD AND WSBA SANCTION

Bolin next argues that we should reverse the superior court's award of attorney fees to Tacoma RV (about $57,000 in *Rinehart* and $78,000 in *Day*) and the order to pay a $50,000 sanction to the WSBA. His argument is premised entirely upon the contention that this court should reverse the disqualification orders. Because we have affirmed the disqualification orders and because Bolin offers no other arguments for our consideration, we reject Bolin's request to reverse the fee awards to Tacoma RV and the sanction owed to the WSBA.

B. SANCTION FOR 75 PERCENT OF KEYSTONE'S FEES AND COSTS

After disqualifying Bolin, the superior court also sanctioned Bolin with an award equal to 75 percent of Keystone's total attorney fees and costs from the entire *Rinehart* litigation. The sanction totaled about $376,000.

Bolin challenges this sanction on several grounds.[10] He first contends that we should reverse the sanction because the disqualification orders were erroneous. As stated above, we affirm the disqualification orders, so this argument fails.

1. Due process

Bolin next argues that the sanction violated his due process rights because he did not have the opportunity to view the unredacted invoices that the superior court reviewed in camera.[11] Bolin insists that his due process rights were violated because the superior court "did not allow Appellant the opportunity to even see—never mind explain or respond to—all the evidence of Keystone RV's claim for reimbursement of $502,169.11." Br. of Appellant at 50 (emphasis omitted).

Keystone responds that Bolin received sufficient notice and the opportunity to be heard for his due process rights to be preserved. It essentially contends that Bolin's access to only the redacted fee statements does not constitute a due process violation when the sanction award was a "holistic, non-specific assessment" grounded on the total amount of the fees and the superior court awarded only a portion of them. Br. of Keystone at 63 (emphasis omitted). Keystone also points out that Bolin did not raise due process concerns before his motion for reconsideration below. And

[10] Preliminarily, Keystone argues that Bolin did not designate the sanction order in his notice of appeal. But "[a]n appeal from a decision on the merits of a case brings up for review an award of attorney fees entered after the appellate court accepts review of the decision on the merits." RAP 2.4(g); *see also* RAP 7.2(i) (allowing a party to obtain review of a superior court's decision on attorney fees, costs, and litigation expenses without filing a separate notice of appeal). Although the order at issue imposed the fees as a sanction rather than a traditional attorney fee award, this was nevertheless a litigation expense, so we review Bolin's remaining arguments under RAP 7.2(i).

[11] As noted above, Keystone substantiated its original request for a $500,000 sanction with two sets of invoices. One set, redacted to remove attorney-client-privileged information, is in our record. The superior court also reviewed in camera an unredacted set of invoices, and those invoices are not in our record.

Keystone emphasizes that Bolin does not cite any law establishing that he had a due process right to review privileged materials supporting the *amount* of Keystone's sanction request, when he clearly had a notice of the amount sought, access to nonprivileged support for the amount, and an opportunity to respond to the *basis* for the sanction request.

"Due process requires notice and an opportunity to be heard before a governmental deprivation of a property interest." *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 224, 829 P.2d 1099 (1992). "Due process must be 'meaningful and appropriate to the nature of the case.' " *Alvarado v. Dep't of Licensing*, 193 Wn. App. 171, 177, 371 P.3d 549 (2016) (quoting *Svendgard v. Dep't of Licensing*, 122 Wn. App. 670, 681, 95 P.3d 364 (2004)). But there is no due process right for an opposing party to see materials protected by attorney-client privilege. *See Cedell v. Farmers Ins. Co. of Wash.*, 176 Wn.2d 686, 698, 295 P.3d 239 (2013) ("The purpose of attorney-client privilege is to allow clients to fully inform their attorneys of all relevant facts without fear of consequent disclosure.").

"A trial court must have authority to manage the parties and proceedings before it." *State v. Gassman*, 175 Wn.2d 208, 209, 283 P.3d 1113 (2012). "Both CR 11 and our inherent equitable powers authorize the award of attorney fees in cases of bad faith." *In re Recall of Pearsall-Stipek*, 136 Wn.2d 255, 266-67, 961 P.2d 343 (1998). "The court's inherent power to sanction is 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' " *State v. S.H.*, 102 Wn. App. 468, 475, 8 P.3d 1058 (2000) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)). "Sanctions may be appropriate if an act affects 'the integrity of the court and, [if] left unchecked, would encourage future abuses.' " *Id.* (alteration in

original) (quoting *Gonzales v. Surgidev*, 120 N.M. 151, 899 P.2d 594, 600 (1995)). We review sanction decisions for abuse of discretion. *Gassman*, 175 Wn.2d at 210.

Bolin supports his due process argument by citing *Dalton M, LLC v. North Cascade Trustee Services, Inc.*, 2 Wn.3d 36, 534 P.3d 339 (2023). There, our Supreme Court determined that Division Three of the Court of Appeals violated a respondent's due process rights by determining that the respondent "engaged in pretrial bad faith conduct beyond the trial court's findings," based on a novel equitable theory that was never litigated at trial and which no party raised on appeal. *Id.* at 56. The Supreme Court then determined that attorney fees were not available in that case because Division Three reversed the only claim on which the plaintiff prevailed. *Id.* at 56-61. The Supreme Court explained that "the appellate court cannot affirm a sanction unless the record shows bad faith conduct *related* to the conduct for which the party was sanctioned," while in that case there was no finding of bad faith related to the conduct for which Division Three imposed a sanction. *Id.* at 55.

Bolin claims that *Dalton M* supports his position because it establishes that "courts must comply with . . . constitutional due process fundamentals when [they] assess[] the amount of attorney fees that a person must pay to the opposing party." Br. of Appellant at 45. But *Dalton M* does not require reversal of the sanction award in this case. Unlike in *Dalton M*, here, Bolin knew exactly why, and on what bases, Keystone was seeking the sanction. The superior court received two rounds of briefing on the subject: one before the hearing and a second when Keystone moved for reconsideration of the initial denial. Bolin was clearly on notice about the total amount of fees Keystone was seeking to have him sanctioned with and knew exactly the alleged misconduct of his that supported the request. And Bolin responded both orally and in writing to the various

statutes and court rules under which Keystone sought the sanction. The issues causing concern in *Dalton M* are not present here.

In addition, as Keystone pointed out, Bolin has not articulated any specific argument that the redactions impaired his ability to defend against the basis for the sanction, which was a contention that Bolin had litigated in bad faith for the entire span of the *Rinehart* litigation. Indeed, the law generally suggests that, without more, he has no entitlement to review privileged materials. *See Cedell,* 176 Wn.2d at 698. Thus, we hold that Bolin received the requisite due process that enabled him to have notice of, and an opportunity to respond to, Keystone's requested sanction. *Bryant*, 119 Wn.2d at 224.

2. Redacted fee records not before this court

Bolin also argues that this court must be able to review the same redacted fee records that the superior court saw in order to properly review his due process arguments about the sanction. He reasons that the sanction should be reversed because the unredacted invoices the superior court reviewed in camera are not in the appellate record, "mak[ing] it impossible for this Court to review that award in this appeal." Br. of Appellant at 53.

Boiled down, Bolin appears to be arguing that in order to decide the purely legal question of whether his due process rights were violated by the superior court's review of privileged materials, this court must be able to review those privileged materials. But Bolin does not explain how our review of those unredacted materials is connected to his due process rights, especially because, as noted above, he had no due process right to view them himself. Moreover, the basis for the overall amount of the sanction is clear, as supported by the redacted invoices (in our appellate record). Also clearly in our appellate record is the underlying bases for imposing the sanction, the superior court's unchallenged findings—that Bolin was a vexatious litigant whose

"entire course of conduct throughout the lawsuit evidenced bad faith." RCP at 10838 (internal quotation marks omitted). And Bolin has chosen not to challenge those underlying bases. Under these specific circumstances, we hold the superior court's sanction decision should not be reversed simply because it failed to include the unredacted documents in the appellate record.[12]

3. Other arguments

Bolin also makes additional arguments related to two discrete portions of the sanction award to Keystone. Bolin contends that the superior court erred by (1) categorically including in its sanction award Keystone's fees for responding to the WSBA complaint Bolin filed against Keystone's counsel and (2) including within the sanction an assessment for Bolin's prelitigation conduct.

Included within the total amount of sanctions Keystone requested was roughly $10,000 that Keystone paid for its counsel to respond to the WSBA grievance that Bolin filed after the superior court ordered Bolin to report his own conduct to the WSBA. Bolin makes no argument about the dollar amount, but he argues that this category of expense should not have been included because his grievance was "protected and privileged conduct under Washington law." Br. of Appellant at 51. He cites ELC 2.12, which provides that communications to the WSBA "are absolutely privileged, and no lawsuit predicated thereon may be instituted against any grievant, witness, or other person providing information." Br. of Appellant at 51-52.

---

[12] Notwithstanding our resolution of this issue, we encourage superior courts to make all relevant materials available for appellate review, including, after taking appropriate steps, materials reviewed in camera. But under the specific facts of this case, where Bolin challenged the overall entitlement to a sanction and the process used, and where the superior court's order makes clear that the fee award was a sanction based on a global review of the costs of litigation incurred by Bolin's bad faith and vexatious prosecution of frivolous claims, our review of these materials was not necessary.

But Bolin clearly waived any privilege. After Bolin submitted his grievance about Keystone's counsel to the WSBA, he submitted evidence of the submission to the superior court as proof that he had complied with the superior court's order (an order intended to require Bolin to report his *own* conduct to the bar association). As the superior court explained, "Bolin brought these issues into the province of this [c]ourt by filing his grievance . . . instead of reporting to the WSBA as ordered by this [c]ourt." RCP at 10830-31. Moreover, as noted above, the sanction was imposed holistically, in the amount equal to 75 percent of Keystone's total fees, based on the superior court's global assessment of the case. It was not directly tied to individual line-items.

Next, Bolin asserts that the superior court improperly included within the sanction an assessment for Bolin's prelitigation conduct. He again cites *Dalton M*, where the Supreme Court reversed Division Three's sanction award because there was no finding of bad faith related to the conduct for which Division Three imposed the sanction. 2 Wn.3d at 55. But again, *Dalton M* has no application. The superior court entered numerous unchallenged findings both recounting specific instances of Bolin's bad faith conduct throughout the entire course of proceedings (including his prelitigation conduct) and tying those instances to the need for the sanction award. Thus, it was not improper for the superior court to include fees incurred during the prelitigation period in the total amount used to calculate the sanction.

We hold that the superior court did not abuse its discretion by sanctioning Bolin in an overall amount equal to 75 percent of Keystone's fees and costs based on his bad faith litigation and prelitigation conduct.[13]

---

[13] Bolin also requests that this court remand for further proceedings before a different judge. But because the superior court did not err by disqualifying Bolin and Jensen as a sanction for violating RPC 1.9, 1.10, and CR 11, or by imposing the various fee awards and sanctions, no remand is necessary.

III. APPELLATE ATTORNEY FEES

Tacoma RV and Keystone both request attorney fees and costs on appeal pursuant to RAP 18.1(a). Tacoma RV requests fees and costs under RAP 14.2 and RCW 4.84.185 as a prevailing party. Keystone requests fees under RAP 18.9(a) as a sanction for a frivolous appeal.

RAP 18.1(a) allows this court to award appellate attorney fees and costs if "applicable law" permits. RAP 14.2 directs this court to "award costs to the party that substantially prevails on review." But RCW 4.84.185 and RAP 18.9(a) allow this court to impose the reasonable cost of attorney fees only as a sanction for a frivolous appeal.

"An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ, and that the appeal is so devoid of merit that there is no possibility of reversal." *Advocates for Responsible Dev. v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 170 Wn.2d 577, 580, 245 P.3d 764 (2010). "All doubts as to whether the appeal is frivolous should be resolved in favor of the appellant." *Id.* And "[r]aising at least one debatable issue precludes finding that the appeal as a whole is frivolous." *Id*. at 580-81. Although Bolin does not prevail, we are unable to conclude that his appeal was frivolous.

Because Tacoma RV is a prevailing party, we grant Tacoma RV's request for appellate costs under RAP 14.2. We otherwise deny the respondents' requests for appellate attorney fees.

CONCLUSION

We affirm. We grant Tacoma RV's request for appellate costs and otherwise deny the respondents' requests for appellate attorney fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

GLASGOW, P.J.

CHE, J.